# SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

**30 Rockefeller Plaza**
**New York, NY 10112**
**Tel: 212-643-7000**
**Fax: 212-643-6500**

One Riverfront Plaza
Newark, NJ 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500

**Charles J. Falletta**
**Member of the Firm**
**Direct Dial: (973) 643-5926**
**E-mail: cfalletta@sillscummis.com**

650 College Road East
Princeton, NJ 08540
Tel: 609-227-4600
Fax: 609-227-4646

August 19, 2011

<u>**Via ECF**</u>
Honorable Victor Marrero, U.S.D.J.
United State Courthouse
500 Pearl Street
New York, New York 10007

      Re:    Shaywitz v. American Board of Psychiatry and Neurology
              Case No. 09-4387 (VM)

Dear Jude Marrero:

      Pursuant to Your Honor's August 11, 2011 Order, the American Board of Medical Specialties ("ABMS") hereby submits this letter brief and the Declaration of Kevin B. Weiss, M.D., as *amicus curiae* in support of defendant the American Board of Psychiatry and Neurology ("ABPN").

      The ABMS is the umbrella organization for the 24 approved medical specialty boards in the United States, including the ABPN. (Weiss Affidavit, attached as Ex. 1 at ¶ 2). ABMS is a nonprofit organization, established in 1933, and serves to coordinate the activities of its Member Boards and to provide information to the public, the government, the profession and its Members concerning issues involving specialization and certification in medicine. ABMS' mission is to maintain and improve the quality of medical care in the U.S. by assisting the Member Boards in their efforts to develop and utilize professional and educational standards for the evaluation and certification of physician specialists. (*Id.* at ¶ 3). The purpose of certification is to give assurance to the public that physicians certified in a specialty have the education and training needed by a specialist in that field of medicine, and that they have demonstrated that they possess the knowledge, judgment, professionalism, and clinical and communication skills necessary to provide quality patient care in that specialty. (*Id.*).

      Even though certification by an ABMS Member Board is voluntary, most physicians seek to be certified. Currently, approximately 85% of United States physicians are certified by an

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Honorable Victor Marrero, U.S.D.J.
August 19, 2011
Page 2

ABMS Member Board. (*Id.* at ¶ 4). The 24 ABMS Member Boards each offer at least one "primary" certificate in specialties such as internal medicine, pediatrics, surgery and neurological surgery, and also certify physicians in numerous subspecialties, such as cardiology, infectious disease, pediatric cardiology, pain medicine and pediatric surgery. (*Id.* at ¶ 5). ABPN issues specialty certificates in general psychiatry, general neurology and general neurology with special qualification in child neurology. (*Id.* at ¶ 6). ABPN also certifies physicians in numerous subspecialties, such as adolescent psychiatry, forensic psychiatry and neurodevelopmental disabilities. (*Id.*).

The governing body of each ABMS Member Board is comprised of specialists qualified in the specialty represented by the board. (*Id.* at ¶ 7). These specialists determine the extent of training required and the examinations which will best establish a physician's ability to provide quality care as a specialist. (*Id.*). The Member Boards determine whether candidates have satisfactorily completed approved residency training programs, and then further evaluate the candidates with comprehensive examinations. Only those who have satisfied the Member Board's requirements are certified. (*Id.*).

ABMS Member Boards require applicants for board certification to establish that they have completed a specified period of postgraduate medical training in their specialty from an approved residency program. To be certified in a primary specialty area, physicians must complete three or more years of training from a residency program approved by the Accreditation Council for Graduate Medical Education before becoming eligible to take the certification examination. Each board then administers written and, for some boards, oral examinations, to determine whether the applicant has mastered his or her specialty. (*Id.* at ¶ 8).

The ABMS and its Member Boards have a strong interest in enforcing all certification requirements and guaranteeing fair administration of certification examinations. ABMS and its Member Boards further have a strong interest in insisting upon conformance with their policies for requesting accommodations in the testing and educational context. If ABMS and its Member Boards are not allowed to freely determine the requirements needed to establish whether a physician is qualified to practice within a specialty, or if they are required to make exceptions to those requirements which they would consider to substantially alter the requirements generally applicable to all applicants, they cannot fulfill their mission of assuring the public that physicians certified by ABMS Member Boards are qualified medical specialists.

A.   **Allowing Dr. Shaywtiz's Request for an Exemption from the Oral Examination Undermines the Integrity of ABPN's Physician Certification Requirements and Fundamentally Alters the Requirements for Board Certification.**

ABMS Member Boards are all professional organizations, which establish the criteria for board certification. As noted above, the purpose of certification is to assure the public that certified physicians have the training, knowledge and skill needed by a specialist in that field of

medicine. Each ABMS Member Board determines the amount and type of training needed to qualify for certification as well as the types of examinations which will best establish that the physician possesses the knowledge and skills needed to provide quality care as a specialist.

Certification by an ABMS Member Board is not required to practice medicine in any state. (Ex. 1 at ¶ 9). Because certification is voluntary, and the qualifications are determined by experts in each field of medicine, courts should give substantial deference to ABMS Member Boards in determining the requirements for certification. *See e.g., Sidique v. Univ. of Pittsburgh Dep't of Dermatology*, 2003 U.S. Dist. LEXIS 20473, at *13-15 (W.D. Pa. 2003) ("decisions made by university faculties, both in the medical field and otherwise, are entitled to heightened deference"); *Castillo v. American Bd. of Surgery*, 221 F. Supp. 2d 564, 571 (E.D. Pa. 2002) (holding, within context of physician's denial of medical board certification, that "courts defer to a professional association when it determines the competence of a member as long as the reasons for the decision are not arbitrary, capricious, or discriminatory") (citation omitted).

As a result of the rigor of certification requirements by ABMS Member Boards and the acceptance of ABMS certification within the medical profession, the term "board certification" has come to mean certification by an ABMS Member Board. As one court noted, "'Board certification' is a term of art that the ABMS popularized among physicians and has come to designate a certain level of qualification." *American Academy of Pain Management v. Joseph*, 353 F.3d 1099, 1104 (9th Cir. 2004). As the United States Supreme Court noted:

> Board certification of specialists in various branches of medicine, handled by the 23 member boards of the American Board of Medical Specialties is based on various requirements of education, residency, examinations and evaluations.... The average member of the public does not know or necessarily understand these requirements, but board certification nevertheless has "come to be regarded as evidence of skill and proficiency of those to whom they [have] been issued."

*Peel v. Attorney Registration & Disciplinary Commission of Illinois,* 496 U.S. 91, 102 n.11, (1990).[1] Several state legislatures and medical boards have recognized that certification by an ABMS Member Board is an important indicator of physician quality, and have therefore adopted rules prohibiting physicians from advertising that they are "board certified" unless their certification is from an ABMS Member Board or a board deemed equivalent by the state's licensing authorities. *E.g.*, Cal. Bus. & Prof. Code §651(h)(5)(B); F.S.A. §458.3312; Oklahoma Admin. Code, §435:10-7-2 (requires physicians claiming to be "board certified" to establish certification by an ABMS Member Board or a board found by the Oklahoma Board of Medicine to be equivalent.); Texas Administrative Code, Title 22, Part 9, Chapter 164, Rule 164.4(a) (a physician may only advertise board certification if physician is certified by an ABMS Member Board or American Osteopathic Bureau of Specialists or American Board of Oral and

---

[1] At the time of the *Peel* decision, there were only 23 ABMS Member Boards.

**SILLS CUMMIS & GROSS**
A PROFESSIONAL CORPORATION

Honorable Victor Marrero, U.S.D.J.
August 19, 2011
Page 4

Maxillofacial Surgery).  Board certification has also been recognized by the National Committee on Quality Assurance, which accredits health maintenance organizations in the U.S. and by the Joint Commission on Accreditation of Health Care Organizations (now The Joint Commission), which accredits hospitals and other health care facilities in the U.S.  *See American Academy of Pain Management*, 353 F.3d at 1105.

If ABMS Member Boards are required to waive their certification requirements for individual physicians the proper deference that should be afforded ABMS Member Boards will be violated and the credibility by an ABMS Member Board would be shattered.

**B.     Allowing Dr. Shaywtiz' Request for an Exemption from the Oral Examination Will Yield Unfair Application of Certification Requirements and Undermines the Utility of ABPN's Established ADA Disability Policy.**

In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination based on disabilities. 42 U.S.C. § 12101(a)(9) ("the continuing existence of unfair and unnecessary discrimination and prejudice . . . costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.").  This public interest is served by requiring entities to take steps to "assure equality of opportunity" for people with disabilities. *See id*. § 12101(a)(8).

The public interest is further served by ensuring the integrity and fair application of licensing and certification examination requirements, for both disabled and non-disabled individuals.  The "ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally." *Felix v. New York City Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003) (further noting impairments not caused by the disability need not be accommodated).  In other words, "[t]he obligation to make reasonable accommodation . . . does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability." *Raffaele v. City of New York*, 2004 U.S. Dist. LEXIS 17786, 2004 WL 1969869, at *16 (E.D.N.Y. Sept. 7, 2004).

Moreover, while the Act mandates reasonable accommodations, it does not mandate accommodations which would "fundamentally alter" the nature of the goods, services or facilities being offered. As the Supreme Court noted in *PGA Tour v. Martin*, the term "discrimination" is defined by the act to include the failure to make reasonable accommodations, "*unless the entity can demonstrate that making such modifications would fundamentally alter* the nature of such goods, services, facilities, privileges, advantages, or accommodations.'" 532 U.S. 661, 682 (2001) (emphasis in original)(citations omitted). As the Court recognized in *Martin*, even "a less significant change that has only a peripheral impact on the game itself might nevertheless give a disabled player, in addition to access to the competition as required by Title

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

Honorable Victor Marrero, U.S.D.J.
August 19, 2011
Page 5

III, an advantage over others and, for that reason, fundamentally alter the character of the competition." *Id.*

Altering the requirements of board certification to allow one physician to become board certified without passing the oral examinations, while every other physician has to pass those examinations, would give the disabled physician a substantial advantage over the other physicians, and thereby fundamentally alter the requirements for board certification.  More importantly, it would mislead members of the public, who rely on board certification by an ABMS Member Board to assure them that board certified physicians have all been required to undergo the same rigorous examinations as other board certified physicians in that specialty.

ABMS and its Member Boards support and comply with the ADA.  Along with their application materials for examinations, the Member Boards provide general information regarding qualifications for testing accommodations and the requisite application for testing accommodations.  Due to the sheer volume of requests for testing accommodations, ABMS and each of its Member Boards have a strong interest in insisting upon compliance with all policies governing timely requests for accommodations prior to the examination date.  Granting Dr. Shaywitz's request for exemption when he failed to make a timely request for accommodation will effectively render ABPN's and other Member Boards' established disability accommodation policies useless.  To ensure the effectiveness of all Member Boards' ADA compliance policies, Dr. Shaywitz's request for a complete exemption from the oral examination should be denied.

Based on the foregoing, ABMS respectfully supports Defendant American Board of Psychiatry and Neurology's position that imposing the remedy requested by Jonathan Shaywitz will place him on a far superior footing compared to other disabled and non-disabled candidates. Elimination of an examination requirement for one specific individual that applies to all Board certification candidates in this medical specialty will undermine the long-established integrity of the certification process and will impede ABMS and its Member Boards' efforts to maintain and improve the quality of medical care in the United States.

Respectfully submitted,

/s/ Charles J. Falletta

CHARLES J. FALLETTA

Enclosure
cc:     All Counsel of Record

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN SHAYWITZ, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY, <br><br> Defendant. | ECF Case <br><br> Case No. 09-Civ-4387 (VM) <br><br> **DECLARATION OF KEVIN B. WEISS, M.D.** |

KEVIN B. WEISS, M.D., being of full age, declares as follows:

1. I am a physician, licensed to practice medicine in Illinois. I am also the President and Chief Executive Officer of the American Board of Medical Specialties ("ABMS").

2. The ABMS is the umbrella organization for the 24 approved medical specialty boards in the United States, including the American Board of Psychiatry and Neurology.

3. The ABMS is a nonprofit organization, established in 1933, and serves to coordinate the activities of its Member Boards and to provide information to the public, the government, the profession and its members concerning specialization and certification in medicine. ABMS' mission is to maintain and improve the quality of medical care in the United States by assisting the Member Boards in their efforts to develop and utilize professional and educational standards for the evaluation and certification of physician specialists. The purpose of certification is to assure the public that physicians certified in a specialty have the education and training needed by a specialist in that field of medicine and that they have demonstrated that they possess the

1

necessary knowledge, judgment, professionalism, and clinical and communication skills to provide quality patient care in that specialty.

4. Approximately 85% of United States physicians are currently certified by an ABMS Member Board.

5. The 24 ABMS Member Boards each offer at least one "primary" certificate in specialties, such as internal medicine, pediatrics, surgery and neurological surgery. The 24 Member Boards also certify physicians in numerous subspecialties, such as cardiology, infectious disease, pediatric cardiology, pain medicine and pediatric surgery.

6. The American Board of Psychiatry and Neurology ("ABPN") is a Member Board of the ABMS. ABPN issues specialty certificates in general psychiatry, general neurology and general neurology with special qualification in child neurology. ABPN also certifies physicians in numerous subspecialties, such as adolescent psychiatry, forensic psychiatry and neurodevelopmental disabilities.

7. The governing body of each ABMS Member Board is comprised of specialists qualified in the specialty represented by the board. These specialists determine the extent of training required and the examinations which will best establish a physician's ability to provide quality care as a specialist. The Member Boards determine whether candidates have satisfactorily completed approved residency training programs, and then further evaluate the candidates with comprehensive examinations. Only candidates who satisfy the Member Board's requirements are certified.

8. ABMS Member Boards require applicants for board certification to establish that they have completed a specified period of postgraduate medical training in their specialty from an approved residency program. To be certified in a primary specialty

area, physicians must complete three or more years of training from a residency program approved by the Accreditation County for Graduate Medical Educations before becoming eligible to take the certification examination. Each Member Board administers written, and for some boards, oral examinations, to determine whether the applicant has successfully mastered his or her specialty.

9. Certification by an ABMS Member Board is not required to practice medicine in any state.

I declare under penalty of perjury that the foregoing is true and correct.

_____
KEVIN B. WEISS, M.D.

Executed on August 8, 2011

3